NEELEN, Administrator *de bonis non,* Respondent, vs. HOLZHAUER, Appellant.

*February 10—June 20, 1927.*

*Executors: Rights in real estate of decedent: Action to rescind conveyances: In whom action survives.*

1. Where the assets of an estate were amply sufficient to discharge the expenses of administration, debts, and specific legacies, the administrator *de bonis non* had no right to, or interest in, the real estate, and hence could not properly maintain an action to cancel a conveyance by the deceased which had been fraudulently procured.  p. 203.
2. While an administrator may, under proper circumstances, take possession of real estate, it is not his duty to do so unless the rents and profits are needed in the settlement of the estate; and until he does take possession the heirs may maintain ejectment for the land, although the estate has not been settled. p. 199.
3. Real estate descends to the heirs immediately on the death of the owner, subject to the debts of the owner, and in proper cases to the discharge of specific legacies.  p. 201.
4. It appearing without dispute that there existed in the hands of the administrator *de bonis non* sufficient funds to discharge all expenses of administration, debts, and legacies, the right to maintain an action for the rescission of a sale of real estate by decedent survived to the devisees, who have the right to prosecute and control the action; and a judgment of rescission in favor of the administrator is therefore reversed and the action dismissed.  p. 203.

APPEAL from a judgment of the circuit court for Milwaukee county: GUSTAVE G. GEHRZ, Circuit Judge.  *Reversed.*

Right of administrator *de bonis non* to maintain an action for rescission of a sale of real estate made by the decedent. The case was tried upon the merits.   The trial court found in favor of the plaintiff that the conveyance by the deceased had been procured by fraud; required the defendant to reconvey the premises "to the estate of Emma Zartner, and

deliver possession thereof . . . in his official capacity;" that an accounting be had of rents and profits; and an interlocutory judgment was entered accordingly, from which the defendant appeals.

For the appellant there were briefs by *McGovern, Lyons, Curtis, Devos & Reiss,* attorneys, and *J. G. Hardgrove,* of counsel, all of Milwaukee, and oral argument by *Mr. F. E. McGovern* and *Mr. Hardgrove.*

*Walter D. Corrigan, Sr.,* of Milwaukee, for the respondent.

The following opinion was filed April 5, 1927:

ROSENBERRY, J.    One phase of this controversy was before the court and is reported in *Will of Zartner,* 183 Wis. 506, 198 N. W. 363.

The facts as found by the court in brief are as follows: Prior to February 1, 1922, Emma Zartner was the owner of certain premises known as the Granada and Grand Rue apartments.   The defendant was a real-estate operator, familiar with real-estate values; that the deceased and the defendant had been for many years friends and acquaintances and were distantly related; that the defendant from time to time had advised the deceased in relation to business matters and she placed considerable confidence in his integrity, honesty, and business judgment; that at her request he undertook to act as a real-estate broker in the sale of the property, and by reason of their prior relations a fiduciary relationship existed; that he did not disclose to the deceased certain offers which were made him; that he did not make a good-faith effort to sell and dispose of the property; that by reason thereof the deceased was led to believe that on February 16, 1922, $75,000 net was the best proposition that she could obtain for the property; that thereupon the defendant procured the title of the property to be taken in the name of

one William Daehn; that Daehn thereupon gave to defendant a quitclaim deed which was not recorded; that the conveyances were so stamped as to indicate a purchase price of $95,000 instead of $75,000.

It further appears that the deceased by her will distributed approximately $50,000 in specific bequests. Her sons Andrew and Edward, her daughter Louise, and John Wandry, representing the children of a deceased daughter, were made the residuary legatees, to each one fourth. After his removal as executor the defendant filed his final account showing a balance on hand consisting of cash $69,389.13 and other property consisting in the main of notes, mortgages, bonds, stocks, and the balance due on a land contract of the value of $41,743.17. After making certain deductions of jewelry, household goods, clothing, etc., there remained on hand $110,991.80. On September 30, 1924, the plaintiff in this case came into possession of cash more than sufficient in amount to pay all of the specific legacies under the will. Excepting the expenses of his own administration there would have remained a cash balance of approximately $18,889.13, in addition to which there were other securities and personal property distributable only to the residuary beneficiaries amounting to $41,602.67. In that situation the plaintiff began this action, praying "that the defendant be adjudged and required to reconvey the said premises to the plaintiff or the estate of Emma Zartner, deceased, and deliver possession thereof to the plaintiff in his official capacity as aforesaid, and for an accounting," etc.

The first contention made by defendant upon this appeal is that the plaintiff as administrator *de bonis non* may not maintain this action to rescind a conveyance made, executed, and delivered by the deceased testatrix.

"At common law real estate descended to the heir immediately upon the death of the ancestor, and his right of entry

was then perfect. The personal representative of the deceased—the executor or administrator, as such—had nothing whatever to do with the lands of which the deceased died seized, or with the rents and profits thereof.

"By statute the executor or administrator shall return to the proper court an inventory of the real estate of the deceased. . . . If the personal estate is insufficient to pay the debts of the deceased and the expenses of administration, the executor or administrator, upon being licensed by the court so to do, may sell the real estate." *Jones v. Billstein,* 28 Wis. 221.

While an administrator may under proper circumstances take possession of real estate, it is not his duty to do so unless the rents and profits are needed in the settlement of the estate, and until he does take possession the heir may maintain ejectment for the land although the estate has not been settled. *Filbey v. Carrier,* 45 Wis. 469.

Some confusion has been introduced into the decisions by failure to observe the distinction between an action brought to set aside a conveyance made by a decedent which was void as to creditors and an action brought to set aside a conveyance made by a decedent which was procured by fraud practiced upon the decedent. *Ecklor v. Wolcott,* 115 Wis. 19, 90 N. W. 1081, and *Sawyer v. Metters,* 133 Wis. 350, 113 N. W. 682, are examples of the first class. In *Ecklor v. Wolcott* the broad statement is made that there is no right on the part of the administrator to attack alleged transfers of property made by the testator except under the provisions of sec. 3832, Stats. 1898, now sec. 312.13. This statement was qualified in *Borchert v. Borchert,* 132 Wis. 593, 113 N. W. 35, and commented upon in *Sawyer v. Metters, supra.*

That an action for fraud by which the decedent was induced to part with property survives, is established by *Borchert v. Borchert, supra.* The principal question here is in whom the right of action survives. In *Borchert v. Bor-*

*chert* the action was prosecuted by the administrator, but in that case it clearly appears that the entire estate of the decedent had been transferred by means of a fraudulent conveyance.

*Ecklor v. Wolcott* has never been overruled so far as it lays down the rule that, in order to qualify an administrator to bring an action for the rescission of a conveyance made by the decedent, it must appear that there will be a deficiency of assets to pay creditors of the estate and the expenses of administration. *Andrew v. Hinderman,* 71 Wis. 148, 36 N. W. 624; *O'Malley v. O'Malley,* 102 Wis. 639, 78 N. W. 753.

The doctrine of *Jones v. Billstein, supra,* has never been overruled, and from that and other decisions affirming it, it is plain that an administrator has no concern with the real estate unless it is necessary for him to have the rents and profits and dispose of it for the purpose of paying expenses, legacies, and the just debts of the deceased. While he may enter into the possession of it, and without question in a doubtful case the court would direct him to take possession of the real estate, if he intermeddles with it he does so at his peril. The rule is well established and has a substantial basis in sound reason. If the administrator brings a suit to set aside a fraudulent conveyance when it is not necessary for him to have possession of the fruits of the litigation in order to satisfy debts and legacies, he in fact sues as a representative of the heirs or devisees under the will. The right of action being in them, the right to prosecute and control it should be and is in them, as the property when recovered will belong to them. We have in this case a good example of the anomalous position which the plaintiff occupies. The judgment directs the defendant to convey the premises to "the estate of Emma Zartner" and deliver possession to the administrator. If the conveyance was void the real estate

vested in the devisees, not in the "estate of Emma Zartner,"
whatever that may be.    Title to real estate is in the heirs and
to the personal property in the administrator *de bonis non.*
Whether a conveyance to "the estate of Emma Zartner"
would vest title, if indeed it passed any, is at least very doubt-
ful.    *Jones v. Beale,* 217 Pa. St. 182, 66 Atl. 254.

This court has adhered rather firmly to the rule that real
estate descends to the heirs immediately upon the death of
the owner, subject, however, of course, to the debts of the
deceased owner, and in a proper case to the discharge of
specific legacies.

It is argued in this case that the administrator *de bonis
non* is entitled to maintain the action because (a) in order to
maintain it there must be tendered prior to the commence-
ment of the action, or there must be paid as a condition of
relief, a sufficient amount to place the defendant *in statu quo;*
(b) that if such amount be tendered and the tender kept
good or if such condition be made as of obtaining relief and
the frauduent conveyance is canceled and set aside, that it
will then be necessary for the administrator *de bonis non* to
take possession of the real estate and sell it in order to pay
the specific legacies.    As already appears from the statement
of facts, the plaintiff found in his hands a sum amply suffi-
cient to discharge every liability against him as administrator
*de bonis non.*    If the right of action survives and descends,
as we hold it does, to the heirs where there is no will and to
the residuary legatees where by the terms of the will it is
vested in them, then the right to maintain the action is in
the residuary legatees and it is their right to prosecute and
control the action.    If it be said that without the amount of
the legacies it will be impossible for them to make tender or
payment as a condition of relief, it may be said in reply that
that is no concern of the administrator *de bonis non.*    It may
well be, and it in fact appears from the record, that the heirs

are divided as to the desirability of attempting to maintain this action.    Under such circumstances, why should the administrator *de bonis non* have a deciding voice?    It is considered that under the law of this jurisdiction he should not and cannot have such right.    The precise question here under consideration seems not to have been raised very often.    A question somewhat analogous to it is presented in *Parker v. Simpson,* 180 Mass. 334, 62 N. E. 401.    There the administrator of the defrauded decedent joined in an action to set aside a fraudulent conveyance, and the joinder was sustained only upon the theory that the estate was composed of both personal and real property.    The court said:

"It is necessary that the rescission should apply so far as practicable to the whole transaction in order that justice be done to all parties, and it is proper that those who are interested in either kind of property should be parties to the bill, so that the court may have the whole case before it, and that both the person entitled to the real estate and he who is entitled to the personal estate should be bound by the result." Page 341.

Where a special administrator brought an action to cancel a deed procured from the decedent by fraud and thereafter the devisee was substituted by amendment, the court held—

"That it was within the discretion of the trial court to allow the amendment.    That the action must be treated as if it had been originally brought by the devisee, and although she was made a party before the will was allowed, that upon the allowance of the will her title related back to the death of the testatrix.    And as the final decree was not entered until the will had been allowed, it cannot now be assailed for the lack of a proper plaintiff." *Busiere v. Reilly,* 189 Mass. 518, 75 N. E. 958.

It was said in *Brigham v. Hunt,* 152 Mass. 257, 25 N. E. 468:

"Except in cases where an administrator has been licensed to sell real estate to pay debts, or where real estate is held as

Neelen v. Holzhauer, 193 Wis. 196.

security under a mortgage, an administrator has no interest in the lands of his intestate, and cannot maintain an action to recover them."

In *Campbell v. Kuhn,* 45 Mich. 513, 8 N. W. 523, it was held that the right of rescission was in the heirs alone. The court said:

"The administrator has no commission from the law to intervene and by his election unsettle the landed possessions held by the heirs through inheritance, on the specific ground that the ancestor, at the time when the property vested in him, was not of sound mind. Neither is it his province to proceed in disregard of the fact whether the heirs have or have not elected to abide by the grant, and sue to reclaim the purchase money." See 24 Corp. Jur. p. 152, § 629, note 18, and cases cited.

It is· considered that it appearing without dispute that there was in the hands of the administrator *de bonis non* sufficient funds to discharge all his liabilities for expenses of administration, debts, and specific legacies, that he had no right to or interest in the real estate; that the right of action, if any there was, survived to the devisees and that an action to avoid the conveyance vested in them; and that they have the right to prosecute and control the action, if any there be.

It is argued here that the question is not properly raised. An attempt was made to have the matter determined in the proceeding brought to remove the defendant as administrator of the estate, but the question was there expressly reserved. The question raised here is not whether there are proper parties plaintiff, but whether or not the plaintiff in his· representative capacity may maintain the action. If the right of action survived under the facts in this case to the devisees, they could not be concluded by a judgment to which they were not parties. The cause of action under the facts vested in the devisees, not in the plaintiff. *McKenney v. Minahan,* 119 Wis. 651, 97 N. W. 489.

The conclusion which we have reached makes it unnecessary to discuss other questions raised.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the plaintiff's complaint.

DOERFLER, J., dissents.

A motion for a rehearing was denied, with $25 costs, on June 20, 1927.