MANN, Administrator, Plaintiff and Respondent, vs. GRIN-
WALD and wife, Defendants and Appellants: MAYER,
Defendant and Respondent.

*November 11—December 9, 1930.*

For the appellants there was a brief by *George A. Hart-
man* of Juneau, attorney, and *Richmond, Jackman, Wilkie*

*& Toebaas* of Madison of counsel, and oral argument by *Mr. Harold M. Wilkie* and *Mr. Hartman.*

For the respondent Mayer there was a brief by *O'Meara & O'Meara* of West Bend, and oral argument by *P. J. O'Meara.*

For the respondent Mann a brief was filed by *J. M. Peters* of Hartford.

FRITZ, J. Action brought under sec. 312.13, Stats., by plaintiff as administrator of the estate of Joseph Mayer, to recover from appellants, Ottilia Grinwald (who is a sister of Joseph Mayer) and her husband, Math. Grinwald, two promissory notes and the proceeds of two other notes which the complaint alleged were indorsed by Joseph Mayer to the Grinwalds without any consideration whatsoever, "for the purpose only of concealing the said Joseph Mayer's assets and defeating the claim of the wife, Ella Mayer, and it was intended by all the parties to the transaction that the said notes were to remain the property of the said Joseph Mayer."

The court found that Joseph Mayer had indorsed and delivered the notes to the Grinwalds, without consideration, for the fraudulent purpose of defeating any claim which Joseph Mayer's wife might have for support and maintenance, and "generally in fraud of any other creditors," and "to defraud other creditors he had or might have;" that the transfer was not made or intended as a gift to the Grinwalds, but for no other purpose than to conceal his property to defeat any claim his wife might make against him; that the Grinwalds knew of such purpose; and that the four notes constituted the only property then owned by Joseph Mayer, with the exception of a note for $900 executed by Frank Mayer. There is also a finding that there have been filed against the estate claims aggregating $4,853.96, which include funeral expenses and expenses of last sickness, board, lodging, washing, and care of the deceased; and that the only

property of the estate which has come to the administrator are the $900 note executed by Frank Mayer and $45 interest collected thereon.

The delivery of the notes by Joseph Mayer to the Grinwalds occurred in January or February, 1925, at the office and in the presence of a reputable attorney. Nothing occurred in his presence indicative of any fraudulent intent or unlawful transaction. The only basis for the finding as to such intent was a prior indorsement by Joseph Mayer of the same notes to another sister, Catherine Eisert, in May, 1924, when he received a letter from his wife demanding $500. In 1912 she had separated from Joseph Mayer, and had 'commenced an action for divorce, which was never brought to trial. However, although not divorced, she undertook to marry another, and lived with him as his wife. It does not appear that she made any demand at any other time on Joseph Mayer or his estate, or that she ever claimed that Joseph Mayer assigned any of his assets with intent to avoid any right, debt, or duty owing to her; or that she had ever demanded or suggested the commencement of this action by the administrator to recover any such assets for her benefit. Likewise, it does not appear that at the time of the delivery of the notes to the Grinwalds in January or February, 1925, Joseph Mayer then contemplated incurring indebtedness or was indebted to any person, excepting possibly to a sister, Lena Mayer, on a claim filed by her against his estate for $280 for services performed in nursing him in 1922 to 1924. However, even as to that claim, as well as to all the claims filed, which amount to $4,853.96, there has been no adjudication as to the validity thereof, and no proof was offered in this case upon which any finding to that effect could be based. The only claims filed were by the brother, Frank Mayer, and the sisters, Lena Mayer and Catherine Eisert, and, with the exception of $328.96 for expenses of last sickness and funeral, they are charges for

board, lodging, washing, and care of Joseph Mayer. Counsel admitted on the record that the administrator intended to file objections to those claims, and while unallowed they afford no basis for assuming that indebtedness existed to such extent.

Sec. 312.13, Stats., under which this action was brought, so far as here material, provides:

"When there shall be a deficiency of assets in the hands of an executor or administrator and when the deceased shall in his lifetime have conveyed any real estate or any right or interest therein, with intent to defraud his creditors or to avoid any right, debt or duty, . . . the executor or administrator may and it shall be his duty to commence and prosecute to final judgment any proper action for the recovery of the same, and may . . . for the benefit of creditors, take possession of or sue for and recover all goods, chattels, rights or credits which may have been so fraudulently conveyed by the deceased in his lifetime, whatever may have been the manner of such fraudulent conveyance."

Although it was held in *Andrew v. Hinderman*, 71 Wis. 148, 36 N. W. 624 (in which the sufficiency of allegations of a complaint was challenged by demurrer), that an action may be commenced under sec. 312.13, Stats., by an administrator before it has been established by some judicial proceeding that there are creditors of the estate because of whose claims there will be a deficiency of assets to meet the debts of the deceased, nevertheless, before there can be a recovery in such action, it must be established by competent proof that there is a deficiency of assets, and also that the assets were transferred by the deceased with the intent to defraud his creditors or to avoid any right, debt, or duty. In order to determine whether a deficiency of assets exists, there must be an adjudication or judicial determination as to the validity and extent of the claims which have been filed. The mere filing of the claims does not establish that the

deceased was indebted for the amounts claimed. Consequently, in the absence of proof and an adjudication as to the validity of the claims which were filed, there was no basis for the court's finding that there existed a deficiency of assets.

Likewise, there is no proof as to the existence or validity of any indebtedness of the deceased, either at the time of the transfer or subsequent thereto. But even if it had been established that Lena Mayer's claim for $280 for nursing deceased in 1922 to 1924 constituted a valid indebtedness for that amount, as Joseph Mayer still retained the $900 note, the transfer of the other notes did not deprive him of sufficient assets to discharge his indebtedness to Lena Mayer.

Although a conveyance made with fraudulent intent may also be set aside in so far as necessary to protect the rights of creditors to whom the deceased contemplated becoming indebted, and whom he intended to defraud when the conveyance was made (*Sawyer v. Metters*, 133 Wis. 350, 113 N. W. 682; *Wheeler v. Single*, 62 Wis. 380, 22 N. W. 569), in the case at bar it has not been established that there exists any indebtedness on the part of the deceased, which, at the time of the transfer, he contemplated incurring with intent to defraud prospective creditors.

On the other hand, although a wife is entitled, before or after her husband's death, to set aside a colorable transfer by her husband to avoid his obligations to her or to defeat her right as his widow (*Sederlund v. Sederlund*, 176 Wis. 627, 187 N. W. 750), it does not appear that the wife of Joseph Mayer has ever claimed that he conveyed the notes in suit with intent to avoid any right or debt to which she was entitled or any duty owing to her. She may well have realized that her bigamous second marriage impaired her right to maintenance by Joseph Mayer or to an allowance as his widow, and that he left no real estate to which she

could claim dower or homestead rights. At all events, it does not appear that she ever requested or authorized the plaintiff herein, as administrator, to recover any assets for her benefit. Consequently, there are neither creditors nor other persons to whom Joseph Mayer owed some debt or duty which he sought to avoid, or who had rights which he sought to defeat by a fraudulent conveyance. The administrator does not represent any such creditor or persons in prosecuting this action. Hence there exists no right in the administrator to recover in an action instituted under sec. 312.13, Stats., and the complaint herein should have been dismissed.

*By the Court.*—Judgment reversed, with directions to enter judgment dismissing the complaint.